# IN THE COURT OF APPEALS OF IOWA

No. 18-2164
Filed March 4, 2020

**JAMES ALAN CHRISTENSEN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

James Christensen appeals from the district court's denial of his second application for postconviction relief. **AFFIRMED.**

Alfredo Parrish and Adam Witosky of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

James Christensen appeals the district court's denial of his second application for postconviction relief (PCR). Christensen argues he is entitled to a new trial based on newly discovered evidence. We conclude this evidence is merely cumulative and impeaching and would not have changed the result of the trial. We affirm the denial of his second PCR application.

## I. Background Facts and Proceedings.

The facts underlying Christensen's 2009 criminal conviction are fully set forth in our opinion in his direct appeal. *See State v. Christensen*, No. 09-0961, 2010 WL 4792120, at *1 (Iowa Ct. App. Nov. 24, 2010). Relevant here, Christensen was charged with sexual abuse in the second degree by aiding and abetting based on allegations he helped corner and "comfort" a woman, E.S., while his friend and coworker John Sickels raped her.[1] Christensen and Sickels were tried together, and a jury found them guilty as charged. Christensen was sentenced to a term of incarceration not to exceed twenty-five years with a mandatory seventy percent minimum. His conviction and sentence were affirmed on direct appeal. *Id.* at *9–10. His first PCR application was denied, and the denial was affirmed on appeal in 2016. *Christensen v. State*, No. 15-0765, 2016 WL 3272213, at *4 (Iowa Ct. App. June 15, 2016).

In 2017, Christensen filed this second PCR application based on his allegations that two items of newly discovered evidence raise concerns about

---

[1] At the time, Christensen was the chief of police in Creston, Iowa, and Sickels was the assistant chief.

whether E.S.'s trial testimony was truthful. Christensen argues that if a jury heard this evidence, the result would have probably been different.

The alleged new evidence is a recorded phone call and some Facebook posts. First, the recording is of a June 2015 phone call between E.S. and Renee Hoyt, a woman who became acquainted with E.S. and spoke to her on the phone three times. At the time of the phone calls, E.S. was staying in a domestic-violence shelter, having recently fled from her long-term, on-again, off-again boyfriend who had beaten her. E.S.'s adult son feared for his mother's safety and asked Hoyt to speak with his mother because she needed a friend. Sympathetic to Christensen, Hoyt knew E.S.'s current circumstances and spoke with E.S. under the guise of friendship. While Hoyt's stated purpose for the phone calls was to help E.S., Hoyt knew Christensen's first PCR application was on appeal and believed E.S. was lying about the sexual assault. Hoyt brought up the criminal case during at least two of these calls. Hoyt decided to record the third call to capture what she believed were E.S.'s inconsistent statements about the assault. During the recorded call, E.S. accused both Sickels and Christensen of raping her, not just Sickels, as she had testified at trial. With evidence of this call in hand, Christensen claims E.S.'s statements during the call contradict her trial testimony and call her testimony into doubt.

Next, Christensen offered the second pieces of evidence. This exhibit shows screenshots of E.S.'s Facebook posts, which appear to be from 2016, about domestic violence perpetrated by her boyfriend. Christensen claims these Facebook posts establish that, at trial, E.S. would lie about the sex act being

nonconsensual to avoid upsetting her boyfriend.  Christensen asserts the evidence shows the canard fabricated by E.S.

After a hearing, the district court determined that E.S.'s statements in the recording were inadmissible hearsay and that Christensen could not show that the recording and the Facebook posts, taken independently or together, were likely to change the outcome of the trial.  The court denied this second PCR application. Christensen appeals.

## II.  Standard of Review.

We review PCR actions based on newly discovered evidence for correction of errors at law.  *More v. State*, 880 N.W.2d 487, 499 (Iowa 2016).  "[W]e will affirm if the trial court's findings of fact are supported by substantial evidence and the law was correctly applied."  *Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003).

## III.  Analysis.

On appeal, Christensen argues E.S.'s statements made during the phone call recording are admissible as statements against interest and the recording and E.S.'s Facebook posts constitute newly discovered evidence.  He believes this evidence requires a new trial.  For purposes of this appeal, we assume without deciding that E.S.'s statements during the phone call are admissible.  For that reason, we will not address the hearsay claim and will only address the newly discovered evidence claim.

Iowa Code section 822.2(1)(d) (2017) allows "a postconviction-relief applicant a right of action when '[t]here exists evidence of material facts, not previously presented and heard, that requires a vacation of the conviction or sentence in the interest of justice.'"  *Moon v. State*, 911 N.W.2d 137, 151 (Iowa

2018) (quoting Iowa Code § 822.2(1)(d)). To succeed on a claim of newly discovered evidence, the applicant must show,

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Id.* (citation omitted). "The standard for whether the evidence probably would have changed the result of the trial is a high one because of the interest in bringing finality to criminal litigation." *More*, 880 N.W.2d at 499.

Christensen argues he is entitled to a new trial based on the phone call recording and the Facebook posts. We consider each claim in turn.

**A. Phone Call Recording.** Even if we assume Christensen has established the first two prongs,[2] Christensen concedes he intends to use E.S.'s statements made during the phone call to impeach her credibility. Still, he argues these statements are material to the issues at trial because they directly contradict her version of events, and had these statements been admitted at trial it would have been grounds for, at a minimum, a mistrial.

E.S.'s statements in the phone call do not exonerate Christensen but implicate him as a principal. E.S. never wavered from her testimony that Christensen tried to soothe her while Sickels raped her, the foundation of Christensen's conviction. While she made conflicting statements during the phone call, she did not recant her trial testimony and insisted she was telling the truth at trial.

---

[2] The June 2015 call occurred over six years after the jury verdict.

Apart from E.S.'s testimony, other evidence at trial tended to implicate Christensen, including his own testimony. During his direct examination, Christensen denied having touched or comforted E.S. and denied having witnessed a sex act. On cross-examination, however, he both admitted and denied that he saw Sickels having sex with E.S. He also acknowledged it was possible that he may have touched E.S.'s hand and told her, "Don't worry, this didn't happen" when he left.

For all of these reasons, Christensen has not met the high bar of proving the result probably would have been different had the jury heard this recording.

**B. Facebook Posts.** Christensen argues that E.S.'s Facebook posts about domestic violence perpetrated by her boyfriend are evidence of her motivation to lie at trial regarding consent to sexual intercourse. Christensen concedes these posts would be used to attack E.S.'s credibility.

While the Facebook posts were created after the jury verdict, Christensen was aware before trial that E.S.'s boyfriend was abusive. E.S.'s credibility and motivation to lie to avoid angering her boyfriend were directly at issue in the criminal trial and were the subject of a pretrial motion in limine. Although the trial court limited some testimony, the jury heard E.S. testify that she and her boyfriend sometimes got into "semiphysical confrontations" but she was not afraid of him. Likewise, E.S.'s boyfriend testified that he and E.S. sometimes had "physical confrontations" when they had been drinking. And the jury heard from E.S.'s manager about a time E.S. came to work with a black eye, cuts on her hand, and bruises on her arms. When the manager asked E.S. how she got the injuries, E.S. explained her boyfriend had hit her because she was not having enough sex with

him and thought she was cheating on him. E.S. told the manager during that same incident her boyfriend had pointed a shotgun at her and smashed a mirror and window on her van. The manager testified that E.S. was afraid of her boyfriend.

We agree with the district court that "[t]he only thing the posts indicate is that [E.S.] continued to date and be subjected to physical violence by [her boyfriend] after the trial." These Facebook posts are merely cumulative and impeaching. In any event, Christensen has failed to show that admitting these Facebook posts probably would have changed the result of the trial. The jury considered evidence about E.S.'s abusive relationship, rejected the theory that E.S. had a motivation to lie, and convicted Christensen. The district court did not err in denying Christensen's claim on this ground.

**IV. Disposition.**

For these reasons we affirm the district court's denial of Christensen's application for postconviction relief.

**AFFIRMED.**